NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 26 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DENNIS HODGES, an individual, | No. 24-7093 |
| Plaintiff - Appellant, | D.C. No. 3:23-cv-02065-W-MSB |
| v. | MEMORANDUM* |
| TODD GLORIA, both in his personal capacity and in his official capacity as the Mayor of the City of San Diego, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Michael S. Berg, Magistrate Judge, Presiding

Argued and Submitted December 3, 2025
Pasadena, California

Before: CALLAHAN and KOH, Circuit Judges, and BARKER, District Judge.**
Concurrence by Judge BARKER.

Dennis Hodges, a correctional officer and religious pastor, challenges San

Diego Mayor Gloria's veto of his reappointment as a voluntary member to the

City's Police Advisory Board ("Advisory Board") as violating his First

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable J. Campbell Barker, United States District Judge for
the Eastern District of Texas, sitting by designation.

Amendment rights to free speech and free exercise of religion. The Mayor stated that he vetoed Hodges's reappointment because Hodges had made repeated public comments that he considered "transgenderism" to be a sin just like adultery and fornication. The district court dismissed Hodges's First Amended Complaint, citing *Lathus v. City of Huntington Beach*, 56 F.4th 1238 (9th Cir. 2023). It subsequently denied Hodges motion for reconsideration. Hodges filed a timely appeal. We affirm.

We review de novo a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). We review the denial of a motion for reconsideration for abuse of discretion. *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007).

1. Hodges asserts that he was not a policymaker and that government officials may not create religious tests for holding public office. However, a consistent line of cases running from *Elrod v. Burns*, 427 U.S. 347, 368 (1976), through *Branti v. Finkel*, 445 U.S. 507 (1980), to *Blair v. Bethel School District*, 608 F.3d 540 (9th Cir. 2010), and most recently to *Lathus v. City of Huntington Beach*, 56 F.4th 1238 (9th Cir. 2023), hold that an appointed volunteer may be dismissed for statements that might otherwise be protected by the First Amendment when "commonality of political purpose" is an appropriate requirement for the volunteer's services. *Lathus*, 56 F.4th at 1241.

Here, the district court correctly concluded that under the San Diego Municipal Code, the Advisory Board is an extension of the Mayor, who appoints its members, and that commonality of political purpose with the Mayor is required for members of the Advisory Board, such that the Mayor may decline to reappoint a member based on his public comments.

Even if commonality of political purpose presented a closer question, our decisions in *Blair* and *Lathus* concerned the removal of board members from their existing positions. Hodges offers no authority extending the asserted First Amendment right to serve on an advisory committee to cover reappointment to a committee. He does not deny that under the Municipal Code, the Mayor has discretion to appoint or reappoint individuals without cause.

Hodges assertion that we should apply a weighted *Pickering v. Board of Education*, 391 U.S. 563 (1968), balancing test was rejected in *Lathus*, 56 F.4th at 1243 n.2 (citing *Hobler v. Brueher*, 325 F.3d 1145, 1150 (9th Cir. 2003) ("where the *Branti* exception applies the employee can be fired 'for purely political reasons' without any *Pickering* balancing.")). We are bound by that decision.

2. It appears that Hodges first raised his free exercise of religion claim—that he was discriminated against based on his sincerely held religious beliefs—in the district court in his motion for reconsideration. The district court held that the motion was based on a new legal theory and that Hodges had failed to demonstrate

legal error.

Hodges has not shown that the district court erred in rejecting his free exercise claim. To prevail on this claim, Hodges would have to show that even though the veto of his reappointment did not violate his free speech rights, it violated his free exercise rights because of his underlying religious beliefs. He offers no case law supporting such a proposition. Moreover, he does not explain how his religious motive for making public statements changes the court's evaluation of his claim; nor does he deny that the Mayor chose not to reappoint him because of his public statements. Accordingly, he has not shown that the district court abused its discretion in rejecting his free exercise claim.

The district court's grant of defendant's motion to dismiss and denial of Hodges motion for reconsideration are **affirmed.** [1]

---

[1] Defendant's request for judicial notice is granted.

*Hodges v. Gloria*, No. 24-7093
BARKER, District Judge, concurring:

I agree with my colleagues that *Lathus v. City of Huntington Beach*, 56 F.4th 1238 (9th Cir. 2023), dictates that Dennis Hodges's position on the Advisory Board fits within the policymaker exception. I write separately to note that *Lathus*'s articulation of the exception's breadth may be in tension with other First Amendment jurisprudence.

In analyzing First Amendment claims, a citizen's and a government's respective burdens usually vary depending on which specific right is asserted, even if the same facts underlie different claims. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523–25, 527–28 (2022) (discussing free-exercise-of-religion and free-speech analytical frameworks). This circuit's approach in *Lathus*, however, analyzes the First Amendment rights to freedom of association, freedom of speech, and free exercise of religion under a single test in the context of public employment.

The policymaker exception originally applied only to the first of those three rights. The First Amendment right to freedom of association generally prohibits the government from conditioning public employment on political-party affiliation. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (citing *Elrod v. Burns*, 427 U.S. 347, 355 (1976) (plurality opinion)). But an exception exists when the nature of a public office makes it necessary "for the effective performance" of that office to discriminate based on political party. *Branti v. Finkel*, 445 U.S. 507,

518 (1980); *Elrod*, 427 U.S. at 367–68 (plurality opinion). When that is true, the government's need is not then balanced against the employee's interest in freedom of association. The exception simply applies, and the legal analysis ends.

When a public employee's First Amendment right to freedom of speech is at issue, however, courts ordinarily employ an analysis featuring a balancing test under *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006). When a public employee speaks as a citizen on a matter of public concern, courts balance the employee's speech interests against the public employer's interest in efficiently performing public services. *Kennedy*, 597 U.S. at 527–28. The government's interest in controlling such speech is usually weaker for public offices lower down the totem pole of government authority—such as the Advisory Board at issue here.

Yet another analysis applies to a public employee's free-exercise-of-religion claim. If a plaintiff shows that a challenged policy burdens his sincere religious practice and is not neutral or generally applicable, the burden shifts to the government to "satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Id.* at 525. That test again looks to the strength of the government's interest. Religious expression can thus be "doubly protected" under both the Free Exercise and Free Speech Clauses. *Id.* at 543.

The policymaker exception began as a simple, binary test to decide whether a public employee could be fired for political-party alignment. *See O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 718–19 (1996). But it has evolved in this circuit to govern any First Amendment claim brought by a dismissed public official or employee. Under *Lathus*, "an appointed public official can be removed for engaging in otherwise protected First Amendment activity" if "commonality of political purpose . . . is an appropriate requirement" for the public office in question. 56 F.4th at 1241 (internal quotation marks omitted). Put another way, if the role in question passes the "commonality of political purpose" test, the First Amendment gives the officeholder no protection from dismissal based on his associations, his speech, or his religious practice—regardless of the weight or strength of those interests and the weight or strength of the government's need for commonality of political purpose.

By avoiding a balancing test and applying a one-step exception across the board for First Amendment claims in the public-employment context, *Lathus*'s approach may be in tension with broader principles of First Amendment jurisprudence, which seek to account for the sometimes-complex interplay between the government's interests and a given First Amendment right. *See, e.g.*, *Kennedy*, 597 U.S. at 527 (noting this complexity in the free-speech and public-employment context). It also differs from the approach used in other circuits. *See, e.g.*, *Borzilleri v. Mosby*,

3

874 F.3d 187, 190–91, 193–94 (4th Cir. 2017) (applying different analyses to free-dom-of-association and free-speech claims); *Curinga v. City of Clairton*, 357 F.3d 305, 309–13 & n.8 (3d Cir. 2004) (same and noting circuits' different approaches). Federal courts would benefit from clarification of that circuit split and how the pol-icymaker exception fits with free-speech and free-exercise claims in the public-em-ployment domain.